# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **ESTATE OF ALMA BROWN, et al.,** | § § § § | |
| Appellants, | § § | |
| v. | § § § | **Civil Action No. 3:25-cv-2855-E** |
| **1 GLEN HILL ROAD OPERATIONS, LLC, et al.,** | § § § § | |
| Appellees. | § § § § | |
| **IN RE:** | § § § | |
| **GENESIS HEALTHCARE, INC., et al.,** | § § § § | **Chapter 11** **Case No. 25-80185 (SGJ)** |
| Debtors. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is an appeal filed by twenty-seven individuals and estates, headlined by the Estate of Alma Brown (collectively, "Appellants" or "Claimants"), from the Bankruptcy Court's October 8, 2025 Order Denying Motion of Certain Holders of Personal Injury and Wrongful Death Claims for Relief from the Automatic Stay to Pursue Claims Against Non-Debtor Defendants ("Stay Relief Denial Order"). The appeal has been fully briefed in accordance with Federal Rule of Bankruptcy Procedure 8018. Also before the Court is Appellants' Amended Motion for Order Certifying Direct Appeal (ECF No. 22).

After consideration of the record, the parties' submissions, and relevant legal authority, and for the reasons stated below, the Court **DENIES** Appellants' Amended Motion for Order

**Memorandum Opinion and Order - Page 1**

Certifying Direct Appeal (ECF No. 22), **VACATES** the Stay Relief Denial Order, and **REMANDS** to the Bankruptcy Court for further proceedings consistent with this opinion.[1]

## I.    Background

On July 9, 2025, Genesis Healthcare, Inc. ("Genesis"), a post-acute care provider which operates facilities nationally, and 298 of its affiliates and subsidiaries (collectively, "Debtors" or "Debtors-Appellees"), each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the U.S. Bankruptcy Court for the Northern District of Texas ("Bankruptcy Court"), commencing the above-captioned chapter 11 cases that are being jointly administered. Upon filing of the bankruptcy petitions, all claims against Debtors—including Appellants' claims—were automatically stayed under 11 U.S.C. § 362.

On August 22, 2025, Appellants—who purport to hold personal injury tort or wrongful death claims against Debtors in the above-captioned chapter 11 cases—filed a motion for a "comfort order" in an effort to receive explicit confirmation that the automatic stay did not apply to their personal injury and wrongful death claims against non-debtor defendants, including non-debtor insiders and affiliates, for alleged torts that occurred inside Debtors' facilities and in the operation of Debtors' business. If the automatic stay applied, Appellants asked the Bankruptcy Court to lift the stay to allow them to commence and prosecute these direct claims against non-debtor defendants in the civil justice system. *See generally* Motion of Certain Holders of Personal Injury and Wrongful Death Claims for Relief from the Automatic Stay to Pursue Claims Against Non-Debtor Defendants [Bankr. Docket No. 577] ("Stay Relief Motion"). In addition to seeking,

---

[1] Under Fed. R. Bankr. P. 8019(b), oral argument must be allowed unless the district judge "examines the briefs and record and determines that oral argument is unnecessary" for one of three reasons. Having examined the briefs and record, the Court determines that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Fed. R. Bankr. P. 8019(b)(3).

**Memorandum Opinion and Order - Page 2**

in effect, a judicial declaration that the automatic stay did not apply to their direct claims against non-debtor defendants, the Stay Relief Motion asserts that each Appellant "holds a personal injury tort or wrongful death claim against the Debtors" and that Appellants "have the right under state law to seek recovery from non-debtor entities and individuals under various legal doctrines and theories of liability, including fraud and the doctrines of alter ego and veil piercing." *Id.* ¶ 3. Appellants identified seven non-debtors against whom they declared they may bring personal injury or wrongful death claims based on alter ego and veil piercing theories of liability. *Id.* ¶ 13. They described the "co-liable non-debtor" parties as ReGen Healthcare, LLC, Career Staff and GEC Rehabilitation Services, as well as "certain individuals, including Joel Landau, David Gefner, David Harrington, and John Randazzo." Appellants argued that "whatever rights are afforded to [them] under state law to seek a recovery from highly solvent non-debtor insiders and affiliates are rights that [they] are free to exercise outside of bankruptcy and should be free to exercise while these chapter 11 cases are pending." *Id.* ¶ 3. Appellants also maintained that, "[t]o the extent that the automatic stay applies, cause exists to grant relief from the automatic stay to permit the Claimants to pursue their claims against non-debtor parties in the civil justice system." *Id.* ¶ 77.

Appellants further requested an adversary proceeding prior to any ruling that had the impact of temporarily preventing claims from being pursued against non-debtors:

> Finally, it bears noting that the Debtors have not sought an extension of the automatic stay to protect co-liable non-debtor defendants from litigation. *See, e.g., In re Red River Talc, LLC*, Case No. 24-90505 (CML), Adv. Pro. No. 24-03194 (Bankr. S.D. Tex.).

> To obtain such relief, the Debtors would have to satisfy the Fifth Circuit's standard for obtaining injunctive relief. To date, the Debtors have not initiated any adversary proceedings involving a request that the stay be extended to protect non-debtor parties. If the Debtors took such actions, it is doubtful that they could show, *inter alia*, that they would suffer irreparable harm.

**Memorandum Opinion and Order - Page 3**

> The parties who suffered irreparable harm are the Claimants. Preventing or delaying them from seeking justice would not serve the public interest. Permitting solvent, codefendants to escape liability and hide behind the automatic stay would disserve the public interest. The equities here do not favor the Debtors or their related parties.  They favor the dead and those who seek justice on their behalf.

Stay Relief Motion [Bank. Doc. No. 577 at 25, ¶¶ 78-80].

On September 4, 2025, Debtors-Appellees, apparently in response to Appellants' Stay Relief Motion, filed Debtors' Motion for Entry of Order (I) Extending the Automatic Stay to Non-Debtor Defendants and (II) Granting Related Relief [Bankr. Docket No. 785]. By their motion, Debtors-Appellees sought to stay Appellants' existing and future claims against non-debtors, including, without limitation, Genesis's employees, officers, and directors. *See id.*

Thereafter, Debtors-Appellees objected to the Stay Relief Motion contending, among other things, that Appellants' request for a declaration that the stay did not prevent them from filing suits against non-debtor defendants was not ripe, did not present a justiciable controversy, and Appellants were seeking an impermissible advisory opinion based on hypothetical facts (as their Stay Relief Motion was devoid of detail about any purported direct claims against non-debtor defendants); and (ii) insofar as their claims against non-debtor defendants were premised on alter ego and veil piercing theories of liability (rather than direct claims), these claims are property of the estate under Chapter 11 of the Bankruptcy Code and pursuant to settled Fifth Circuit law. *See generally* Debtors-Appellees' Obj. [Bankr. Docket No. 925].

On September 29, 2025, the Bankruptcy Court held a hearing on the Stay Relief Motion. After extensive oral argument, the Bankruptcy Court recognized the overlap between the relief Appellants sought in the Stay Relief Motion and the relief Debtors-Appellees' sought in their Motion for Entry of Order (I) Extending the Automatic Stay to Non-Debtor Defendants and (II)

**Memorandum Opinion and Order - Page 4**

Granting Related Relief [Bankr. Docket No. 785]. Specifically, the transcript from the hearing contains the following exhange:

> The Court:    Let me jump ahead.
>
> Mr. Hall:    Yes, Your Honor.
>
> The Court:    The Debtors' motion to extend stay that is set next week. I think October 8, maybe.
>
> Mr. Hall:    I believe you are right, Your Honor.
>
> The Court:    To stay litigation of, I guess, tort claimants -- I don't know if it's more broad -- against, well, nondebtor defendants.  Is it my bad that these were not set together?  Because it feels like Mr. Goodman is seeking relief which next week I would be hearing your argument, don't let any litigation go forward against nondebtors.  Is it just my bad that I didn't coordinate with my courtroom deputy and set these together, or why are these not set together?  They seem very overlapping.
>
> MR. HALL:  There is zero chance, Your Honor, that I will ever stand up here and say that it is your –
>
> THE COURT:  Well, okay.  But you may.
>
> MR. HALL:  But I will agree with Your Honor that there are at least potential argument overlaps.

Transcript Regarding Hearing Held September 29, 2025 ("Bankruptcy Hr'g Tr.") 52:13-25–53:1-6 (ECF No. 21-1 at 265-66).[2]

With respect to Appellants' request for an order seeking a declaration that the automatic stay does not apply to direct claims it may have against non-debtors and that they be allowed to pursue these direct claims, the Bankruptcy Court denied the motion as "too theoretical, too hypothetical, or just simply not ripe when we don't know exactly who will be sued, where, or the

---

[2] Citations to the record refer to the CM/ECF page number at the top of each page rather than the parties' pagination at the bottom of each filing.

**Memorandum Opinion and Order - Page 5**

factual basis for that." Bankruptcy Hr'g Tr. 69:3-6 (ECF No. 21-1 at 282). The Bankruptcy Court

further explained its reasoning:

> It feels a little bit like an advisory opinion. You know, we think we have authority to pursue direct claims against nondebtors, but we want to be safe and not risk violating the stay. I respect that. But the issue of it being not ripe, hypothetical, theoretical, is multifold. It's, we have 27 Tort Claimants banding together in one motion, saying, there might be cause to pursue a bunch of people on direct claims, but we don't exactly know who, where, why. And for all I know, the theories that end up being asserted if I lift the stay might not be direct claims versus derivative claims.
>
> So it's just too hypothetical, I guess you would say, in my mind at this point to grant any relief, even a specific grant of relief that says, the stay doesn't apply to direct claims that these 27 tort victims may have against nondebtors. I mean, without it being fleshed out, I feel like that is an inappropriate holding.

Bankruptcy Hr'g Tr. 69:7-22 (ECF No. 21-1 at 282). The Bankruptcy Court also noted:

> Now, I guess I will say this is without prejudice to any separate or future motion by these Movants or others asking to pursue specifically-described direct claims that it might have against nondebtor defendants for their own torts, such as maybe malpractice against a healthcare provider where direct activity is asserted to have occurred.

Bankruptcy Hr'g Tr. 71:2-7 (ECF No. 21-1 at 284).

Also at the hearing, the Bankruptcy Court denied the Stay Relief Motion insofar as

Appellants requested it lift the stay to allow them to assert claims against non-debtor defendants

that were premised on alter ego and veil piercing theories of liability:

> [T]his Court believes, under existing Fifth Circuit authority, whether it's 30 years old or not, that only the Debtors or a Debtor representative have standing to pursue a remedy or theory of liability against any nondebtor based on corporate veil piercing or alter ego or similar doctrines.
>
> The remedy, whether it's against a natural person or an affiliated entity, would belong to the estate because the underlying theory is that some control person has misused the corporate form and should be held liable for the Debtor's corporate obligations, or inadequate separateness was existent so that the separate entity in name should not be considered separate and its assets should be amalgamated with the Debtor's for the benefit of all creditors.

**Memorandum Opinion and Order - Page 6**

Thus, the remedy, I believe, under Fifth Circuit precedent, is property of the estate, a 541 property interest.

So the Court cannot find cause to lift the automatic stay to allow these 27 Movants to assert alter ego or veil piercing remedies against nondebtors.

Bankruptcy Hr'g Tr. 70:9-25–71:1 (ECF No. 21-1 at 283-84).

On October 8, 2025, the Bankruptcy Court issued a written Order Denying Motion of Certain Holders of Personal Injury and Wrongful Death Claims for Relief from the Automatic Stay to Pursue Claims Against Non-Debtor Defendants (the "Stay Relief Denial Order") [Bankr. Docket No. 1204]. First, the Stay Relief Denial Order provides:

> Pursuant to section 362(a)(1) of the Bankruptcy Code, the Claimants' direct claims, if any, against any non-Debtor party that is a co-defendant of the Debtor are stayed. This stay applies to direct claims, if any, that have been asserted by Claimants in litigation involving a Debtor or could be asserted by Claimants in litigation involving a Debtor. Notwithstanding the foregoing, this Order is without prejudice to Claimants filing subsequent motions for relief from the automatic stay to file, commence, continue, or prosecute direct claims, if any, against any non-Debtor party that is or could be added as a co-defendant of a Debtor. Any such motion must specifically describe the direct claims the Claimants seek to file, commence, continue, or prosecute.

Id. ¶ 2. Thus, notwithstanding that the Bankruptcy Court stated at the hearing that it was unable to grant Appellants' relief from the stay to pursue direct claims against non-debtors because their request was too hypothetical and not ripe, it ultimately held, albeit without prejudice, that "the stay applies to direct claims, if any, that have been asserted by Claimants in litigation involving a Debtor or could be asserted by Claimants in litigation involving a Debtor." Id.

Second, the Stay Relief Denial Order provides:

> Pursuant to section 362(a)(3) of the Bankruptcy Code, the Court denies the Claimants' request for relief from the automatic stay to exercise the Claimants' state law rights and remedies to seek compensation from non-Debtor parties for injuries allegedly caused by the Debtors based on veil piercing, alter ego, or similar remedies. The Court finds that the Claimants' state law rights and remedies to seek compensation from non-Debtor parties for injuries allegedly caused by the Debtors based on veil piercing, alter ego, or similar remedies are property of the Debtors'

**Memorandum Opinion and Order - Page 7**

estates under sections 541(a) and 362(a)(3) of the Bankruptcy Code and Fifth Circuit precedent.

*Id.* ¶ 3.

Relatedly, following a hearing, on October 14, 2025, the Bankruptcy Court granted Debtors' Motion for Entry of Order (I) Extending the Automatic Stay to Non-Debtor Defendants and (II) Granting Related Relief [Bankr. Docket No. 785]. *See* Order (I) Extending the Automatic Stay to the Non-Debtor Defendants and (II) Granting Related Relief [Bankr. Docket No. 1269] ("October 14, 2025 Order"). In the October 14, 2025 Order, among other things, the Bankruptcy Court granted Debtors' motion to stay claims against a set of non-debtors that included Genesis's employees, officers, and directors. *See id.*

Appellants timely appealed to challenge the propriety of the Stay Relief Denial Order, the October 14, 2025 Order, as well as a Claims Procedure Order.[3]

## II.   Legal Standards

### A.  Certification of Direct Appeal

In a bankruptcy appeal, pursuant to 28 U.S.C. § 158(d)(2)(A), a district court is able to certify a direct appeal to the circuit-level court of appeals by certifying that any one of the following circumstances exists: (1) the bankruptcy court's order "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme

---

[3] In addition to appealing to the District Court, on November 17, 2025, Appellants filed a petition for writ of mandamus in the Fifth Circuit with respect to the Bankruptcy Court's Stay Relief Denial Order, the October 14, 2025 Order, and the Claims Procedure Order, which Debtors-Appellees opposed (the "Mandamus Petition"), docketed at *In re Ad Hoc Group of Holders of Personal Injury and Wrongful Death Claims*, No. 25-11268 (5th Cir.). As of the date of this decision, the Mandamus Petition is still pending. Of note, on May 28, 2026, with respect to the Claims Procedures Order, the undersigned denied a Motion for Order Certifying Direct Appeal filed by the same Appellants as in this appeal, granted Debtors-Appellees' Motion to Dismiss Appeal, and dismissed the appeal without prejudice for lack of jurisdiction. *See Estate of Brown, et al. v. 1 Glen Hill Road Operations LLC, et al.*, 3:25-cv-03225-E (N.D. Tex. May 28, 2026), Am. Mem. Op. and Order (ECF No. 35).

Court of the United States, or involves a matter of public importance," § 158(d)(2)(A)(i); (2) the order "involves a question of law requiring resolution of conflicting decisions," § 158(d)(2)(A)(ii); or (4) "an immediate appeal . . . may materially advance the progress of the case or proceeding in which the appeal is taken," § 158(d)(2)(A)(iii). *In re Genter*, 2020 WL 3129637, at *3 (N.D. Tex. June 12, 2020) (Brown, J.) (citing 28 U.S.C. § 158(d)(2)(A)). If a district court determines that any of the circumstances is met, it "shall" so certify. *See* § 158(d)(2)(B). Upon certification, the court of appeals may authorize the direct appeal. *See* § 158(d)(2)(A).

Bankruptcy Rule 8006 governs the procedures for the certification of a bankruptcy court order for direct appeal to a federal circuit court of appeals. *See* Fed. R. Bankr. P. 8006. It specifies, in relevant part, that "[a] party's request for certification under 28 U.S.C. §158(d)(2)(A) . . . must be filed with the clerk of the court where the matter is pending. The request must be filed *within 60 days* after the judgment, order, or decree is entered." Fed. R. Bankr. P. 8006(f)(1) (emphasis added). Bankruptcy Rule 8006(b) further specifies: "For purposes of this rule, a matter remains pending in the bankruptcy court for 30 days after the first notice of appeal concerning that matter becomes effective under Rule 8002. After that time, the matter is pending in the district court or BAP." *Id.* Subsection (d) of the same Rule provides, "Only the court where the matter is pending under [Rule 8006](b) may certify a direct appeal to a court of appeals. The court may do so on a party's request or on its own." Fed. R. Bankr. P. 8006(d).

### B. Standard of Review

When reviewing a bankruptcy court's order, a district court sits as an appellate court. *See In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 293 (5th Cir. 2013) (citation omitted). "Generally, a bankruptcy court's findings of fact are reviewed for clear error and conclusions of law are reviewed de novo." *Id.* at 294 (citation omitted). A finding of fact is clearly erroneous

when "the reviewing court upon examination of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Justiss Oil Co. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1062 (5th Cir. 1996) (citing *United States v. US. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "The bankruptcy court's denial of a motion for modification of a stay is reviewed for abuse of discretion." *In re Mirant Corp.*, 440 F.3d 238, 245 (5th Cir. 2006) (citation omitted)

## III.    Analysis

### A.   The Amended Motion to Certify is Denied.

On October 24, 2025, Appellants filed their Motion for Order Certifying Direct Appeal ("Original Motion") (ECF No. 11). On December 16, 2025, Appellants, without seeking leave of court, filed their Amended Motion to Certify (ECF No. 22), thereby superseding and rendering moot their Original Motion. *See* ECF No. 38 (electronic order denying as moot Original Motion). Debtors-Appellees filed their response in opposition on December 30, 2025 (ECF No. 25), and on January 6, 2026, Appellants filed their reply (ECF No. 28).

#### 1.   *The Amended Motion to Certify is Denied as Untimely.*

In their Amended Motion to Certify, Appellants contend their request for direct certification of their appeal of the Stay Relief Denial Order is timely:

> Any request for direct certification under 28 U.S.C. § 158(d)(2)(B) must be made not later than **60 days** after the entry of the judgment, order, or decree. 28 U.S.C. § 158(d)(2)(E). The Appellants filed their notice of appeal on October 14, 2025—over 30 days ago. *See* Exhibit C. The Stay Order was entered on October 8, 2025—less than 60 days ago.

Am. Mot. Certify (ECF No. 22 at 17-18) (Appellants' emphasis). The Court disagrees with Appellants' contention that the Stay Relief Denial Order was entered "less than 60 days" before they filed their Amended Motion to Certify.

Memorandum Opinion and Order - Page 10

On October 8, 2025, the Bankruptcy Court issued its Stay Relief Denial Order. The 60-day deadline to request direct certification, therefore, expired on December 5, 2025. Appellants filed the Amended Motion to Certify, without leave of court, on December 16, 2025, *eleven days after the 60-day deadline*. Because the 60-day deadline is jurisdictional, the untimeliness of the Amended Motion to Certify is fatal to Appellants' efforts to seek a direct appeal to the Fifth Circuit. *See, e.g., In re Holloway*, 425 F. App'x 354, 355 (5th Cir. 2011) ("After consideration of our jurisdiction over this appeal, we must dismiss, as we find that the sixty-day time period imposed on certification requests by 28 U.S.C. §158(d)(2)(E) is jurisdictional, and the parties did not abide by that time frame."); W. Homer Drake Jr. & Karen Visser, Bankr. Prac. for Gen. Practitioner § 4:16 n.15 (2025) ("The requirement of filing the request within 60 days has been held to be jurisdictional, such that the failure to file within the stated time deprives the appellate court of jurisdiction.") (citation omitted).

Appellants may protest that the Original Motion was filed within the 60-day period. That argument fails. The Original Motion has been superseded and rendered moot by the Amended Motion to Certify. *See* ECF No. 38 (electronic order denying as moot Original Motion). In addition, Appellants explicitly rely only on the Amended Motion to Certify to argue their request is timely (and make no mention of the Original Motion). *See* Am. Mot. Certify (ECF No. 22 at 17-18). As shown above, the Amended Motion to Certify was filed 71 days after the Stay Relief Denial Order and it is, therefore, untimely pursuant to 28 U.S.C. § 158(d)(2)(B).

For these reasons, the Court lacks jurisdiction to certify a direct appeal to the Fifth Circuit of the Bankruptcy Court's Stay Relief Denial Order. Thus, the Court denies Appellants' Amended Motion to Certify.

**Memorandum Opinion and Order - Page 11**

### 2. Alternatively, the Amended Motion to Certify is Denied Because None of the § 158(d)(2)(A) Direct-Review Circumstances Exist.

In the alternative, even assuming Appellants' Amended Motion to Certify is timely, the Court denies Appellants' request to certify a direct appeal because Appellants have failed to satisfy any of the direct-appeal circumstances set forth in § 158(d)(2)(A).

Appellants move to certify a direct appeal based on the circumstances under § 158(d)(2)(A): that the appeal involves: "questions of public importance"; "questions of law with no controlling Fifth Circuit or Supreme Court decisions"; and because an "immediate appeal would materially advance the Case." Am. Mot. Certify (ECF No. 22 at 21). Debtors-Appellees oppose the request, arguing that it "does not meet any of the requirements for certifying a direct appeal to the Fifth Circuit under section 158(d)(2)(A)." Resp. in Opp. to Am. Mot. Certify (ECF No. 25 at 5). The Court agrees.

First, the Court rejects Appellants' contention that the Stay Relief Order involves a question of law for which there is no controlling law. As Debtors-Appellees correctly note, "While Appellants now claim that there is no controlling Fifth Circuit precedent, in the Bankruptcy Court they properly acknowledged that binding precedent exists." *Id.* (ECF No. 25 at 14). Specifically, in their Stay Relief Motion filed before the Bankruptcy Court, Appellants recognized that, "Some Federal Circuit Courts, including in the Fifth Circuit, that have considered whether claims based on the alter ego or veil piercing doctrines are estate claims have held that such claims are estate claims under section 541(a)."). Stay Relief Motion [Bankr. Docket No. 577] ¶ 43. Appellants' arguments—that Fifth Circuit precedent does not apply here because, were the issue before the Fifth Circuit today, it would decide the matter differently, or that applying precedent would result in a violation of their constitutional rights—were unsuccessful in the Bankruptcy Court. Similarly, the undersigned is not persuaded by Appellants' arguments.

Memorandum Opinion and Order - Page 12

Under Fifth Circuit law, as recognized by the Bankruptcy Court at the September 29, 2025 hearing, claims seeking to hold alter egos or control persons liable for the debts of the debtor belong to the estate. *In re Packer*, 816 F.3d 87, 92 (5th Cir. 2016) (Texas law) (recognizing that claims predicated upon alter ego and reverse veil piercing theories of liability "belong to the debtor," are "property of the estate," lie within the control of the Trustee, and generally may not be brought by a creditor) (cleaned up); *In re Moore*, 608 F.3d 253, 258-59 (5th Cir. 2010) (Texas law) (same); *In re Schimmelpenninck*, 183 F.3d 347, 360 (5th Cir. 1999) (Texas law) (an alter ego suit that attempted to pierce the corporate veil and recover assets improperly moved through the corporate structure belonged only to the estate); *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153 (5th Cir. 1987) (Texas law) (the alter ego action brought by the creditor in fact belonged to the debtor and was property of the estate within the meaning of § 541(a)(1)).

When claims against a non-debtor are property of the estate, only the debtor has standing to pursue them, and the pursuit of such claims by a non-debtor is a violation of 11 U.S.C. § 362(a)(3). *See In re S.I. Acquisition, Inc.*, 817 F.2d at 1150 ("[A] section 362(a)(3) stay applies to a cause of action that under state (or federal) law belongs to the debtor [or] that seeks to recover property of the estate where the property is held or controlled by a person or entity other than the debtor."); *In re Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994) ("If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim."). This is true even if outside the bankruptcy proceeding, a non-debtor was otherwise entitled to assert such claims. *See In re Moore*, 608 F.3d at 261 ("[T]he right to recoup a fraudulent conveyance, which outside of bankruptcy may be invoked by a creditor, is property of the estate that only a trustee or debtor in possession may pursue once a bankruptcy is under way." (citation omitted)); *see also In re HSM Kennewick, L.P.*, 347 B.R. 569, 571 (Bankr. N.D. Tex. 2006) ("Section 362(a)(3)

**Memorandum Opinion and Order - Page 13**

implements a stay of any action, whether against the debtor or third parties, that seeks to obtain or exercise control over the property of the debtor.").

For these reasons, certification is not proper under § 158(d)(2)(A), as the appeal involves a question of law for which there is controlling legal precedent.

Second, the Stay Relief Denial Order does not involve a matter of public importance. "[U]ltimately, 'public importance' is a relative thing, and it doesn't necessarily mean what a litigant considers to be important." *In re MPF Holding U.S. LLC*, 444 B.R. 719, 726 (Bankr. S.D. Tex. 2011) (*quoting In re Gen. Motors Corp.*, 409 B.R. 24, 28 (Bankr. S.D.N.Y. 2009)). A leading treatise explains that the standard for a "matter of public importance" is a high bar that can be met (1) when deciding a legal question would "advance the cause of jurisprudence" to an unusually high degree or (2) when—regardless of the legal question's importance—the matter "could impact a large number of jobs or other vital interest in a community." 1 Collier on Bankruptcy ¶ 5.06[4][b] (Richard Levin & Henry J. Sommer eds., 16th ed. 2026) (footnotes and citations omitted).

The first route to demonstrating a matter of public importance involves legal issues that "transcend the litigants," such as when the question involves the constitutionality of a bankruptcy code provision, applications of non-bankruptcy law in a bankruptcy case, or the special rules for transferring venue in bankruptcy cases. *See MPF Holding*, 444 B.R. at 726 (citation omitted). Under this route, decisions regarding nontrivial aspects of bankruptcy law that turn on "statutory interpretation and common law analysis instead of an in-depth discussion of complex constitutional issues that affect the public as a whole" do not meet the standard. *Id.* "[T]hat an issue is hotly contested and 'unqualifiedly important to the parties'" also will not meet the standard if the issue can be resolved by the district court without resorting to complex constitutional analysis

**Memorandum Opinion and Order - Page 14**

or the like. *See Whittaker, Clark & Daniels, Inc.*, 2023 WL 4875915, at *3 (Bankr. D.N.J. July 31, 2023) (quoting *In re Millennium Lab Holdings II, LLC*, 543 B. R. 703, 716 (Bankr. D. Del. 2016)).

"Under the second route, a case may be important to the public as a practical matter." *In re Genesis Healthcare, Inc.*, 2026 WL 1194759, at *4 (N.D. Tex. May 1, 2026) (Boyle, J.). For example, "a matter of practical public importance could exist where a delay in deciding imposes increasing potential costs to taxpayers." *Id.* (citing *In re Pearl Res. LLC*, 2025 WL 2081580, at *3 (Bankr. S.D. Tex. July 22, 2025)). By contrast, "an appeal that impacts only the parties, and not the public at large, is not a matter of public importance." *Id.* (cleaned up) (citation omitted); *see, e.g.*, *In re Genter*, 2020 WL 3129637, at *4 (finding no matter of public importance where appellants asserted that they, but not anyone else, were stripped of rights).

Under the first route, the legal questions presented here do not require complex analysis, as Fifth Circuit precedent is clear. *See supra*. While the parties disagree about whether claims based on alter ego and veil piercing are claims of the estate, there is no complicated legal question leading to a matter of public importance that would be best addressed directly by the Fifth Circuit.

Appellants' argument for direct appeal that the Stay Denial Order strips them of their important right to sue non-debtors, which analytically fits under the second route, does not meet the standard for a "matter of public importance." Appellants have not argued, for example, that real individuals outside of this bankruptcy case might wish to sue non-debtors but are improperly barred from doing so under the Stay Relief Denial Order. The Stay Relief Denial Order, on the briefing before the Court, appears to impact only the litigants. Thus, the Court has no factual basis to determine that it involves major practical ramifications beyond the litigants.[4]

---

[4] Appellants suggest that if the Stay Relief Denial Order is not reviewed by the Court of Appeals and reversed, tortfeasors will "engage in asset stripping transactions—i.e., the conduct that triggers the application of the successor liability and alter ego doctrines—and then file for bankruptcy to obtain ownership and control over the tort victims' rights and remedies." Am. Mot. Cert. (ECF No. 22 at 20). This

**Memorandum Opinion and Order - Page 15**

Further, Appellants' reliance on "the size of the pool of tort claims here—over of half a billion dollars—and Genesis's size and complexity" to support their request, *see* Am. Mot. Certify (ECF No. 22 at 20), does nothing to persuade this Court that this appeal is a matter of public importance.

To argue that the impact of the Stay Relief Denial Order is broader, Appellants assert that it "will have future ramifications for tort victims and tortfeasors, and for bankruptcy and tort jurisprudence generally." Am. Mot. Certify (ECF No. 22 at 19). These same Appellants made this exact argument, albeit unsuccessfully, before United States District Judge Jane Boyle in their appeal of the Bankruptcy Court's October 14, 2025 Order. In rejecting this argument, Judge Boyle reasoned:

> To argue that the impact of the Extend Stay Order is broader, the Brown Appellants assert that it "will have future ramifications for tort victims and tortfeasors, and for bankruptcy and tort jurisprudence generally." But so does every legal precedent. Were the Court to accept this argument, every appeal would meet the standard for direct appeal because of the possibility that a future court might cite the district court's opinion. Direct appeal is meant to be the exception to the ordinary course of appealing first to the district court (or bankruptcy appellate panel, in the circuits that have them) then to the circuit-level court of appeals. The matters involved in this appeal, though important, do not directly impact the public in a way that justifies the exceptional recourse of direct appeal.

*In re Genesis Healthcare, Inc.*, 2026 WL 1194759, at *5 (internal citation omitted).

The Court agrees with Judge Boyle's reasoning and rejects Appellants' contention for the same reasons.

Finally, this Court disagrees with Appellants that an immediate appeal would "materially advance the progress of the case," as required under § 158(d)(2)(A)(iii). Once again, Judge Boyle considered this same argument by these same Appellants in her decision denying their request for

---

sweeping suggestion is entirely speculative and does not convert this matter into one that purports to settle an open question of law involving a matter of public importance.

**Memorandum Opinion and Order - Page 16**

certification of a direct appeal of the Bankruptcy Court's October 14, 2025 Order. In her well-reasoned decision, she explained that:

> The Brown Appellants' argument that direct appeal will materially advance the case is essentially a prediction that this appeal will end up before the Fifth Circuit regardless of how this Court rules on the merits. But movants for direct appeal "must demonstrate some reason beyond mere time saved by skipping the district court" because that sort of argument could always be used to bypass district court review. *See Whittaker, Clark & Daniels, Inc.*, 2023 WL 4875915, at *3 (Bankr. D.N.J. July 31, 2023). For material advancement, there must be "something 'extraordinary or urgent about this situation that recommends departing from the standard appellate process.'" *Id.* (quoting *Stanziale v. Car-Ber Testing, Inc. (In re Conex Holdings)*, 534 B.R. 606, 611 (D. Del. 2015)). The Brown Appellants have not provided an extraordinary or urgent reason for bypassing this Court's review, and the Court finds none exists.

*Id.* (cleaned up).

In the present case, Appellants similarly contend that direct appeal will materially advance the progress of the Bankruptcy Case because either they or the Debtors-Appellees will appeal any decision of this Court. Am. Mot. Certify (ECF No 22 at 21-22). For the reasons stated by Judge Boyle, *supra*, and by other courts addressing this factor, the undersigned rejects Appellants' rationale. *See In re Genesis Healthcare, Inc.*, 2026 WL 1194759, at *5 (Boyle, J.); *see also*, *e.g.*, *In re Am. Hous. Found.*, 2013 WL 3808096, at *2 (Bankr. N.D. Tex. July 22, 2013) ("threat of a certain appeal to the circuit court can be made in any case" and does not warrant certification); *In re Millennium Lab Holdings II, LLC*, 543 B.R. at 716-17 ("[C]ase law is clear that even the near certainty that this appeal will ultimately end up before the Third Circuit is not a basis on which to certify the order.").

Because Appellants have not met their burden of demonstrating a ground for certification under 28 U.S.C. § 158(d)(2), the Court finds certification of a direct appeal to the Fifth Circuit is not appropriate in this case and denies the Amended Motion to Certify.

**Memorandum Opinion and Order - Page 17**

### B. The Bankruptcy Court did not Follow Proper Procedures for Temporarily Preventing Certain Claims from Being Pursued Against Non-Debtors.

Pursuant to 28 U.S.C. § 158(a), this Court has jurisdiction to hear appeals from final bankruptcy court orders, from interlocutory orders issued under Section 1121(d) of Title 11, and with leave of the court, from other interlocutory orders. 28 U.S.C. § 158(a). The Stay Relief Denial Order was final and, thus, immediately appealable. *See Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 47 (2020).

Nevertheless, after considering the record in this case, in conjunction with the record in the related appeal filed by these same Appellants with respect to the Bankruptcy Court's October 14, 2025 Order [Bankr. Docket No. 1269], the Court finds that the Bankruptcy Court did not follow proper procedures prior to temporarily preventing Appellants from pursuing certain claims against non-debtors. Given the substantial overlap between the appeals, as recognized by both the Bankruptcy Court and counsel at the September 29, 2025 hearing, an examination of Appellants' related appeal of the Bankruptcy Court's October 14, 2025 Order is warranted.

Appellants filed a separate appeal involving the Bankruptcy Court's October 14, 2025 Order [Bankr. Docket No. 1269]. *See Estate of Brown, et al. v. 1 Glen Hill Road Operations LLC, et al.*, 3:25-cv-02963-B (N.D. Tex.). In the October 14, 2025 Order, among other things, the Bankruptcy Court granted Debtors' motion to stay claims against a set of non-debtors. On May 1, 2026, Judge Boyle determined, among other things, that because the Bankruptcy Court's October 14, 2025 Order had the impact of temporarily preventing certain claims from being pursued against non-debtors, Fifth Circuit jurisprudence required an adversary proceeding. *In re Genesis Healthcare, Inc.*, 2026 WL 1194759, at *6-9 (citing *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 762-63 (5th Cir. 1995)). Because the Bankruptcy Court did not provide an adversary proceeding prior to issuing its October 15, 2025 Order, she vacated the Order and remanded to the

**Memorandum Opinion and Order - Page 18**

Bankruptcy Court for further proceedings. *Id.* at *10. The Court agrees with Judge Boyle's detailed and well-reasoned decision.

Here, for similar reasons, the Court finds the same result is required. As previously explained, on the heels of Appellants' Stay Relief Motion, Debtors-Appellees filed their Motion for Entry of Order (I) Extending the Automatic Stay to Non-Debtor Defendants and (II) Granting Related Relief [Bankr. Docket No. 785]. As previously explained, *see supra* Sec. I, during the September 29, 2025 hearing on the Stay Relief Motion, the Bankruptcy Court expressed concern regarding the overlap between the relief Appellants sought in the Stay Relief Motion and the relief Debtors-Appellees sought in their Motion for Entry of Order (I) Extending the Automatic Stay to Non-Debtor Defendants and (II) Granting Related Relief [Bankr. Docket No. 785]:

> The Court:    Let me jump ahead.
>
> Mr. Hall:    Yes, Your Honor.
>
> The Court:    The Debtors' motion to extend stay that is set next week. I think October 8, maybe.
>
> Mr. Hall:    I believe you are right, Your Honor.
>
> The Court:    To stay litigation of, I guess, tort claimants -- I don't know if it's more broad -- against, well, nondebtor defendants.  Is it my bad that these were not set together?  Because it feels like Mr. Goodman is seeking relief which next week I would be hearing your argument, don't let any litigation go forward against nondebtors.  Is it just my bad that I didn't coordinate with my courtroom deputy and set these together, or why are these not set together?  They seem very overlapping.
>
> MR. HALL:  There is zero chance, Your Honor, that I will ever stand up here and say that it is your –
>
> THE COURT:  Well, okay.  But you may.
>
> MR. HALL:  But I will agree with Your Honor that there are at least potential argument overlaps.

Bankruptcy Hr'g Tr. 52:13-25–53:1-6 (ECF No. 21-1 at 265-66).

**Memorandum Opinion and Order - Page 19**

As in the related appeal, here, the Bankruptcy Court did not conduct an adversary proceeding. And, although not labeled as a "temporary injunction," central portions of the Bankruptcy Court's Stay Relief Denial Order, like its May 14, 2025 Order, have the impact of temporarily preventing certain claims from being pursued against non-debtors.[5] As Judge Boyle correctly held after an in depth review of Fifth Circuit jurisprudence, "Under *Zale*, that type of relief requires an adversary proceeding." *In re Genesis Healthcare, Inc.*, 2026 WL 1194759, at \*7.

The Court also concludes that Appellants did not waive any right to an adversary proceeding because they explicitly requested an adversary proceeding in their Stay Relief Motion. *See* Stay Relief Motion [Bank. Doc. No. 577 at 25, ¶¶ 78-80]; *see also* Appellees' Reply Br. (ECF No. 33 at 19).

Like Judge Boyle, the Court here has identified an error in the procedure followed by the Bankruptcy Court. Nevertheless, this opinion does not purport to assess whether any other procedural errors took place or to set forth every step of analysis the Bankruptcy Court must take if considering a similar temporary injunction on remand. If, on remand, the Bankruptcy Court considers temporarily enjoining claims against non-debtors, it should hew to the law set forth in *Zale* and the procedures for adversary proceedings provided in Part VII of the Federal Rules of Bankruptcy Procedure.

---

[5] The Court recognizes that not all portions of the Stay Relief Denial Order may have the effect of a temporary injunction or require an adversary proceeding. Nevertheless, because Appellants have appealed the entirety of the Stay Relief Denial Order, the issues are inextricably intertwined, and the Court is unable to unravel or rewrite the Bankruptcy Court's decision on appeal. Accordingly, the Court concludes that it has no option but to vacate the entire Stay Relief Denial Order and remand for further proceedings consistent with this opinion and with Judge Boyle's opinion. *See In re Genesis Healthcare, Inc.*, 2026 WL 1194759, at \*6-9 (N.D. Tex. May 1, 2026).

**Memorandum Opinion and Order - Page 20**

## IV.    Conclusion

For the foregoing reasons, the Court **DENIES** Appellants' Amended Motion for Order Certifying Direct Appeal (ECF No. 22). The Stay Relief Denial Order is **VACATED**, and the Court **REMANDS** to the Bankruptcy Court for further proceedings consistent with this opinion.

The clerk of court is **directed** to close this appeal.

**It is so ordered** this **3rd** day of **June, 2026**.

Ada Brown
UNITED STATES DISTRICT JUDGE